IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARVIN WILLIAMS,
    Plaintiff,

vs.                                    Case No.: 3:07cv488/WS/MD

WENDELL HALL, et al.,
    Defendants.

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. §§ 1983 and 1988 is before the court upon defendants' motion for summary judgment filed on October 8, 2008. (Doc. 22). Plaintiff has responded in opposition to the motion. (Docs. 24, 25). Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that defendants' motion should be denied.

## PROCEDURAL HISTORY

This case involves a use of force at the Santa Rosa County Jail ("the Jail") on November 19, 2003. Plaintiff is suing Wendell Hall, Sheriff of Santa Rosa County, Florida, as well as Deputy Sheriffs Patricia Killiam and Jerry Nash, claiming that on November 19, 2003 Killiam and Nash used excessive force on him in violation of the Eighth Amendment to the United States Constitution, and that said force was pursuant to, and authorized by, the use of force custom and policies of Sheriff Hall. (Doc. 18, pp. 1-2).[1] Defendants, in their motion for summary judgment, argue that

---

[1] Sheriff Hall is sued in his official capacity; Deputy Sheriffs Killiam and Nash are sued in their individual capacities.

**Killiam's and Nash's actions did not violate the Constitution; therefore, they all are entitled to judgment as a matter of law. (Doc. 22).**

## BACKGROUND[2]

On November 19, 2003, plaintiff was a federal inmate housed in post-conviction status at the Jail. (Doc. 24, Ex. 8, Williams Dep. at 14). Federal prisoners housed there are segregated from state and county detainees and prisoners. For several days the federal inmates as a group, including plaintiff, had been complaining about the food. (*Id.*, Williams Dep. at 29, 31, 32). A few days prior to the incident the federal inmates, including plaintiff, had peacefully refused to eat the food and had asked to speak to a supervisor above the rank of the correctional officer in charge of the pod, regarding their complaint. (*Id.*, at 29, 32). That was the extent of the inmates' protest – no other actions had been taken or threats made. (*Id.*, at 32).

On the date of the incident, the federal inmates had again peacefully engaged in a food strike at dinner by refusing to eat and had asked the officer in charge to retrieve a higher-ranking official to meet with them. The inmates had not made any threats, refused any orders or offered verbal or physical resistance to any officer. (*Id.*, at 32, 63). Plaintiff was not part of the food strike on this occasion. He was fasting and had not yet received his dinner. (*Id.*, at 26; *see also* Doc. 24, Ex. 3, Griffin Aff. ¶¶ 3-4; Doc. 22, Williams Dep. at 17; Videotape[3]). The officer in charge, Officer Wagstaff, left the pod, advising the inmates that he was going to get an

---

[2] Some of the incident was captured by a security video camera at the Jail. The videotape is part of the record. *See* Doc. 22, Ex. 2. The facts presented here are viewed in the light depicted by the videotape to the extent those facts are captured on camera. *See Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) (stating that the court "should have viewed the facts in the light depicted by the videotape"). However, not all material facts were captured by the camera due to gaps in filming, the position of the camera in relation to the parties, and lack of audio. The remaining facts recited in the "Background" section are drawn from evidence in the record and are either undisputed or, if disputed, viewed in the light most favorable to plaintiff.

[3] According to the videotape, the use of force occurred at approximately 5:14 p.m.

Case 3:07-cv-00488-WS-MD   Document 31   Filed 03/02/09   Page 3 of 10

Page 3 of 10

official to speak with them about the food. (Doc. 24, Ex. 4, Paulini Aff. ¶ 3; Ex. 8, Williams Dep. at 35). The inmates had not been given an instruction to lock down. (*Id.*, at 32, 35-36). There was no sign of a problem. (Doc. 22, Ex. 1, Williams Dep. at 35). The inmates went about various leisure activities, including talking and playing cards. (Doc. 22, Ex. 2, Videotape). Plaintiff, who had been near his cell, walked across the pod to the telephone and began to call his girlfriend. (Doc. 24, Ex. 8, Williams Dep. at 33).

In the meantime, defendant Killiam was calling for all available staff at the Jail, pulling the "less than lethal weapons" including a taser gun and pepper spray, and requesting that the S.W.A.T team be dispatched to the Jail. (Doc. 22, Ex. 3, Killiam Aff., Jail Incident Report). Upon arrival of the S.W.A.T. team, the officers held a brief strategy meeting, then burst through the doors of the dorm. (*Id.*). Equipped with chemical spray, tasers and "riot pumps," the officers commanded the inmates to go to their cells. (Doc. 24, Ex. 3, Griffin Aff. ¶¶ 5-6; Ex. 8, Williams Dep. at 82; Doc. 22, Ex. 1, Williams Dep. at 39; Ex. 3, Killiam Aff., Jail Incident Report). All of the inmates began complying with the order. (Doc. 24, Ex. 3, Griffin Aff. ¶¶ 5-8; Ex. 4, Paulini Aff. ¶¶ 4-5). Plaintiff was on the telephone and was ordered to hang up. He immediately complied and began walking to his cell without resistance. (Doc. 24, Ex. 3, Griffin Aff. ¶¶ 6-7; Ex. 8, Williams Dep. at 82). After plaintiff had taken approximately five steps toward his cell, defendant Nash, a member of the S.W.A.T. team, shot him once in the back with a taser. (Ex. 3, Griffin Aff. ¶ 8; Ex. 4, Paulini Aff. ¶ 5; Ex. 8, Williams Dep. at 82; *see also* Videotape[4]). Plaintiff fell to the floor. (Doc. 24, Ex. 4, Paulini Aff. ¶ 6; Ex. 8, Williams Dep. at 42). As plaintiff was falling, a female said, "get down" and pushed him to the ground. (Ex. 8, Williams Dep. at 55). Plaintiff

---

[4]The telephone is outside the range of the video camera, as is plaintiff's cell. What is shown on the videotape is an officer pushing or guiding plaintiff forward and around a table and, almost simultaneously, defendant Nash rushing up behind plaintiff and shooting plaintiff in the back with the taser. Plaintiff falls forward and is guided to the floor by an officer standing to plaintiff's right. Plaintiff falls out of view of the video camera. The pepper spraying is not depicted on videotape.

"blanked out." (*Id.*, at 42, 55). After he fell and was lying unconscious on the floor, defendant Killiam pepper sprayed him in the face with a single five-second deployment. (Ex. 3, Griffin Aff. ¶ 8; Ex. 4, Paulini Aff. ¶ 6; Ex. 8, Williams Dep. at 42; Doc. 22, Ex. 1, Williams Dep. at 22). The pepper spray awoke plaintiff. (Doc. 24, Ex. 8, Williams Dep. at 42, 55; Doc. 22, Ex. 1, Williams Dep. p. 22). The pepper spray caused intense, very painful burning at first, then gradually subsided but was still painful for several hours after the incident. (Ex. 8, Williams Dep. at 55-56). The entire use of force, from the time the Taser was deployed until the end of the pepper spray, lasted approximately ten seconds. (Doc. 22, Ex. 1, Williams Dep. at 59). As a result of the incident, plaintiff suffered nightmares, neck and back pain, chest pains, periods of a rapid heart beat, knee pain from falling on his right knee, and emotional distress (Doc. 18, p. Doc. 24, Ex. 8, Williams Dep. at 47, 66).

Approximately thirty minutes after the incident, defendant Killiam prepared an incident report. In describing her version of what occurred, she included the fact that plaintiff was tased by the S.W.A.T. team. (Doc. 22, Ex. 3, Killiam Aff. Attach.). She did not initially report that she pepper sprayed plaintiff. She reported that five days later in an addendum. (*Id.*).

## DISCUSSION

### Summary Judgment Standard

In order to prevail on their motion for summary judgment, defendants must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If defendants successfully negate an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

**Eighth Amendment Standard**

Claims of excessive force by corrections officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. To sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. at 320-21, 106 S.Ct. 1078)). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008); *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. *Campbell,* 169 F.3d at 1376 (citation omitted). Thus, as summarized in *Campbell,* "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five *Hudson/Whitley* factors outlined above, by deference to prison officials' punitive

judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.* The Court in *Whitley* narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support <u>a reliable inference of wantonness in the infliction of pain</u> under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322, 106 S.Ct. 1078 (emphasis added).

### Conclusions of Law Regarding Material Facts

In the instant case, several genuine disputes of material fact exist which preclude entry of summary judgment for defendants. For example, contrary to defendants' assertion that "it is undisputed that Killiam had a jail disturbance in the form of a food strike and refusal to lock down," (doc. 22, p. 7),[5] plaintiff's evidence creates a triable issue as to whether there was a disturbance and whether the inmates had refused to lock down.

As for the tasing, even though defendant Nash had been informed that the inmates had created a disturbance and refused to lock down, that is not the end of the inquiry and does not, in itself, justify tasing plaintiff. Defendant Nash states that he tased plaintiff after plaintiff initially refused to hang up the telephone and then, after hanging up, indicated (by pulling away from Nash) that he was physically

---

[5]Defendant Killiam describes the inmates' food protest in M Dorm as follows:

> M Dorm inmates stated through the door "they would also not lock down at any time and they were going to riot and tear the building aprat." A show of force was presented to M Dorm and a representative was asked for to talk with me [Killiam]. The inmates in M Dorm responded by stating "Fuck you. We will not lock down and we will not talk to you."
>
> Inmates made verbal threats to harm staff and to fuck us up.

(Doc. 22, Ex. 3, Killiam Aff. Attach.).

*Case No: 3:07cv488/WS/MD*

resisting or not complying with Nash's order to return to his cell. (Doc. 22, Ex. 4, Nash Aff., Attach.).[6] Plaintiff has created a triable issue by submitting evidence that upon entry of the S.W.A.T. team, all inmates immediately began complying with the order to return to their cells, and that he in particular immediately hung up the telephone and began walking to his cell. (Doc. 24, Ex. 3, Griffin Aff.; Ex. 4, Paulini Aff.; Ex. 8, Williams Dep.). The videotape does not conclusively resolve the dispute, because the telephones are out of view and there is no sound. The videotape does not render plaintiff's version of events implausible. It shows that immediately before Nash tased plaintiff, an officer in plain clothes was guiding plaintiff around a table (and presumably toward his cell) by placing his hand on plaintiff's right arm and pushing forward. Nash enters the picture and, as the officer's hand leaves plaintiff's arm, comes in between the officer and plaintiff, and tases plaintiff. Simultaneously, another black inmate in plaintiff's vicinity is being similarly guided by the arm to his cell by a S.W.A.T. team member. Their action continues without incident. (Doc. 22, Ex. 2, Videotape). The videotape and plaintiff's evidence submitted in opposition to the motion for summary judgment, are sufficient to raise genuine issues of fact for trial on most of the *Hudson/Whitley* factors. The only factors that appear undisputed are the amount of force used and the extent of plaintiff's injury. Taking plaintiff's version of events as true, a reasonable jury could conclude that defendant Nash's tasing of plaintiff was excessive under the Eighth Amendment.

---

[6]Specifically, Nash describes:

> I encountered two black males on the pay phones, both subjects were ordered off the phone and to lock down. A taser was already deployed in my hands, at the time of entry. One subject obey[ed] my commands after being instructed to lock down, while the other subject refused to get off the phone and I continued to instruct him to hang the phone up and lock down. I grabbed the subject['s] right arm and advised him to hang the phone up, which he did. The subject pulled away from me as I stepped back and I fired the taser (five seconds charge). the subject staggered for a couple of seconds and then fell to the ground and was handcuffed by Deputy Brewton and I. Sometime during this incident after the subject was tased, he received pepper spray to the face by an unknown Correction Deputy.

(Doc. 22, Ex. 4, Nash Aff., Attach.).

*Case No: 3:07cv488/WS/MD*

  **As to defendant Killiam's use of pepper spray,** she states that she utilized the pepper spray upon "observ[ing] a rapid movement in [her] direction to [her] left in a blue uniform;" that she "did not know at this time that the inmate had a tazer deployed to his back side with probes attached;" and that "[t]he situation was hostile and I utilized my O/C to protect myself." (Doc. 22, Ex. 3, Killiam Aff., Attach.). Plaintiff has created a triable issue as to whether the situation was hostile and whether he was in a state of "rapid movement" at the time he was pepper-sprayed. According to his deposition and witness affidavits, plaintiff and the other inmates were peaceful, compliant, and returning to their cells.  Plaintiff was not in motion when he was pepper-sprayed, but had already fallen to the floor.  Taking plaintiff's version as true, a reasonable jury could conclude that defendant Killiam's use of pepper spray was excessive under the Eighth Amendment.

  Remaining is defendant Sheriff Hall's argument that he is entitled to summary judgment because Killiam and Nash are entitled to summary judgment.  (Doc. 22, pp. 8-9).  This being Hall's only stated basis for summary judgment, the motion should be denied in light of the denial of summary judgment to defendants Killiam and Nash.

### CONCLUSION

  Genuine disputes of material fact exist with regard to plaintiff's Eighth Amendment claims against defendants Killiam and Nash.  Taking plaintiff's version of events as true, a reasonable jury could conclude that Killiam and Nash violated plaintiff's rights under the Eighth Amendment.  Because Sheriff Hall's motion for summary judgment is based exclusively on the granting of summary judgment in favor of Killiam and Nash, the foregoing conclusion precludes summary judgment in favor of Sheriff Hall.  Therefore, none of the defendants are entitled to summary judgment.

*Case No: 3:07cv488/WS/MD*

Accordingly it is respectfully RECOMMENDED that defendants' motion for summary judgment (doc. 22) be DENIED.

At Pensacola, Florida this 2nd day of March, 2009.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**